IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JACQUELINE S. JONES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 03-JEO-0143-S |
| | ) |
| WEE CARE ACADEMY, INC., | ) |
| | ) |
| Defendant. | ) |

**ENTERED**

**OCT - 5 2004**

## MEMORANDUM OPINION

Plaintiff Jacqueline S. Jones (hereinafter "Jones" or "the plaintiff") has filed this action, asserting that defendant Wee Care Academy (hereinafter "Wee Care" or "the defendant") improperly terminated her. Specifically, Jones asserts that Wee Care terminated her in violation of the Family and Medical Leave Act of 1993 ("FMLA"). *See* 29 U.S.C. § 2601, *et seq.* Wee Care has filed a motion for summary judgment (doc. 6)[1] along with a brief (doc. 7) and evidentiary submissions (doc. 8)[2] in support of its motion. In response to the defendant's motion, the plaintiff has also filed a brief and evidentiary submissions (doc. 10).[3] Upon consideration of the record and the arguments of counsel, the court finds that the motion is due to be denied for the reasons set out herein.

---

[1] References herein to "Doc. __" are to the document number assigned by the Clerk of the Court to the various pleadings and orders entered in this case.

[2] The defendant's evidentiary submissions include the plaintiff's deposition (Tab A), the transcript of the plaintiff's testimony at the unemployment compensation hearing (Tab B), the deposition of Carolyn Houston (Tab C), the plaintiff's resignation letter (Tab D), the plaintiff's request for leave (Tab E), the Wee Care Employees Policy & Procedure Manual (Tab F), the plaintiff's complaint (Tab G), an audio tape of the Unemployment Compensation Hearing (Tab H), the plaintiff's Interrogatory Responses (Tab I), 29 C.F.R. § 825.309(b) (Tab J), and copies of the cases used in support of its motion (Tab K).

[3] The plaintiff's evidentiary submissions include the plaintiff's deposition (Tab A) and exhibits thereto (Tabs D1, P1, and P3), The Unemployment Compensation Hearing (Tab B), Declaration of Sharon Smith (Tab C), Carolyn Houston's deposition (Tab D), the Unemployment Compensation Decision (Tab E), and a State of Alabama Department of Industrial Relations Monetary Determination (Tab F).

FACTS[4]

Jones was employed by Wee Care Academy at the Bessemer campus from April 20, 1999, until January 15, 2002. (Doc. 10 at 3). At some point, Jones was promoted to a Lead Teacher position. (*Id.*).

Jones planned to take some vacation time around the Christmas holiday 2001. She went in to work on December 21, 2001, which was a Friday. The center was closed Saturday and Sunday, December 22 and 23, as well as Monday, December 24 and Tuesday, December 25. Jones was then scheduled for vacation Wednesday, December 26 through Friday, December 28, as well as Monday, December 31. The Center was closed Tuesday, January 1, 2002, and Jones was scheduled to be off on vacation Wednesday, January 2, 2002. (Jones Dep. at 30-32).

On December 23, 2001, Jones's husband was admitted to Bessemer Carraway Hospital. (*Id.* at 41). Sometime between December 23 and December 28, the plaintiff called Sharon Smith, the Director of the Bessemer Wee Care facility, and told her that her husband had been hospitalized and that she would need to take a leave of absence to care for him. (*Id.* at 43-46). Thereafter, on December 28, the plaintiff submitted a written request for an emergency leave of absence to Ms. Smith. (*Id.* at 49). According to Wee Care company policy, an employee may submit a request for FMLA leave to their center director (Sharon Smith in this instance); the executive director of Wee Care (Carolyn Houston); or the President of Wee Care. (Houston Dep. at 26-27). If the request is made to the center director, the center director is to forward the request to the executive director. (*Id.* at 27).

---

[4]The facts set out below are gleaned from the parties' submissions and they are viewed in a light most favorable to the non-moving party. They are the "facts for summary judgment purposes only. They may not be the actual facts. *See Cox v. Administrator U.S. Steel & Carnegie*, 17 F.3d 1386, 1400 (11th Cir. 1994)." *Underwood v. Life Insurance Co. of Georgia*, 14 F. Supp. 2d 1266, 1267 n.1 (N.D. Ala. 1998).

Smith approved the plaintiff's request for leave and then forwarded her request to Carolyn Houston for her approval.[5] (Smith Decl. at ¶ 7). Then, on or about January 2, 2002, Houston told Smith that Jones's request was going to be denied and that the plaintiff needed to resign. (Smith Decl. at ¶ 9). Around that same time, Houston called Jones at home and asked her why she didn't just quit. (Hearing Tr. at 13-16). Jones told Houston that she did not want to quit and that she planned to come back to work. (*Id.* at 14). Houston then told Jones that Wee Care would not accept her request under her terms and again asked her why she didn't just resign.[6] (*Id.* at 15-17).

Although Jones normally picked up her paycheck at the Bessemer Wee Care facility, her paycheck was not delivered with the others. Therefore, on January 15, 2002, Jones went to the downtown office to pick up her check. (Jones Dep. at 65-67). As the payroll clerk was handing Jones her check, Houston came out and asked to see the check. (*Id.*). Houston took the check and issued Jones a new check, reducing the amount of the check by the number of vacation hours Jones used around the Christmas holiday. (*Id.* at 66-67). Houston then told Jones that she would not be able to issue her the check until Jones signed a resignation letter.[7] (*Id.* at 67). A notation on Jones's timecard during the relevant period reflected that Wee Care needed a resignation letter from her. (*Id.* at P1). Jones contends that she only signed the resignation letter because her husband was in the hospital and she needed the money. Her resignation letter read:

---

[5] Houston alleges that Smith never forwarded the plaintiff's request for FMLA leave to her.

[6] Houston contends that she did not know that Jones had submitted a request for FMLA leave until she filed a lawsuit. She does recall, though, that she was aware before Jones picked up her final paycheck that "her husband was sick and that the doctors had stated to her that she was going to have to have someone twenty-four hours around the clock to watch him, but she didn't want to quit her job due to financial reasons." (Houston Dep. at p. 40).

[7] Houston denies telling Jones this and does not recall speaking with Jones when Jones picked up her check. (Houston Dep. at 36-37). However, Houston initialed Jones's letter of resignation. (Doc. 10 at p. 8; Ex. 3).

> To Whom it may concern
>
> I Jacqueline Jones sorryfully [sic] submit this resignation of employment this ___ day of Jan. 2002, at your request. I give this resignation due to the attention needy [sic] for the recovery of my husband [sic] health. I am greatly appreciable [sic] of the years past [sic] employment, with Wee Care Academy Bess..

(*Id.* at P3).

Jones later applied for, and was denied, unemployment compensation benefits. Jones appealed the denial and on March 12, 2002, the Alabama Department of Industrial Relations conducted a hearing on appeal of the examiner's denial. (Doc. 10, Ex. E). At the hearing, Jones and a Wee Care representative both testified. (Doc. 10, Ex. B). After hearing each side's testimony, the Administrative Hearing Officer found as follows:

> . . . . The claimant communicated [her situation] to the center director and took in a written letter on December 28, 2001, requesting an emergency leave of absence, that was to start January 2, 2002, and end April 31, 2002. She indicated that it was due to the illness of her husband and to her understanding the leave of absence would be approved. She did not ask for any further documentation.
>
> Shortly thereafter, another company official called the claimant and tried to get her to resign. The claimant indicated that it was not her desire to give up her job and that she wanted the leave of absence. After quite a bit of conversation, the claimant was told that the request for leave would not be accepted and again she was requested to resign. The claimant still did not submit a resignation until a couple weeks later when she went in to pick up her last check. She understood at that time that she would have to sign a resignation in order to get her final check.
>
> She did at some time in January turn in a letter of resignation in order to receive her final check. The letter did not specify the date but the claimant thought it was January 15, 2002, that she gave them the letter. The claimant still made clear that it was not her desire to resign but rather be given a leave of absence in order to care for her husband for a period of time. The letter of resignation did indicate that it was being given at the employer's request.
>
> . . . . The employer maintains that had the claimant not resigned and persisted in trying to get the medical leave, then in all likelihood it would have been granted.

4

> The employer considered the claimant to have left the job voluntarily December 21, 2001, even though it was obvious she was approved to be off until January 2, 2002, for another reason. The employer did indicate to the claimant that they require a two week notice to grant a leave of absence. They tried to get her to work a few hours during the next two weeks, so that she could give a two week notice that she needed leave of absence. The claimant was unable to do it although she did go in and finish up some paperwork on December 31, 2002.
>
> . . . .
>
> . . . In this case, . . . , it is evident that the claimant did submit a resignation several weeks after the fact and she did so only to obtain her last paycheck. The evidence clearly shows that the claimant did request a leave of absence several days in advance of her approved time off to be granted a personal leave of absence in full accordance with an established leave of absence plan that should have produced a leave of absence for the claimant. Under those conditions the claimant would not be considered to have left voluntarily by turning down the valid request for a leave. The employer in effect terminated the relationship . . . .

(Doc. 10, Tab E at 1-2). Thereafter, on January 22, 2003, Jones filed this lawsuit. (Doc. 1).

## MOTION FOR SUMMARY JUDGMENT

### Standard

Summary judgment is to be granted only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the declarations, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The party asking for summary judgment "bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided by trial. Only when that burden has been met does the burden shift to the nonmoving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.

1991); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S. Ct. 1598, 1608, 26 L. Ed. 2d 142 (1970).

The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of her case on which she bears the ultimate burden of proof. *Celotex,* 477 U.S. at 322-23; *see* FED. R. CIV. P. 56(a) and (b). Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex,* 477 U.S. at 324. The nonmoving party need not present evidence in a form necessary for admission at trial; however, the movant may not merely rest on the pleadings. *Id.*

After a motion has been responded to, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). "[T]he judges's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 249.

## Discussion

This is a case fraught with factual disputes. The defendant asserts, however, that the only issue currently before the court is not whether it violated the FMLA, but whether the plaintiff voluntarily resigned. (Doc. 11 at 1). If, the defendant argues, the plaintiff voluntarily resigned,

then her FMLA claims fail. If, however, the plaintiff did not voluntarily resign, the defendant correctly acknowledges that its motion for summary judgment is due to be denied and the merits of the case submitted to a jury. (*Id.*).

The FMLA allows eligible employees to take twelve weeks of unpaid leave during any twelve month period to care for an eligible family member who has a serious health condition. It provides that the employee will be restored to equivalent employment upon return from leave. 29 U.S.C. §§ 2612(a)(1)(c) & 2614(a). However, 29 C.F.R. § 825.309(b) provides that "if an employee gives unequivocal notice of intent not to return to work, the employer's obligations under the FMLA to maintain health benefits . . . and to restore the employee cease." 29 C.F.R. § 825.309(b). Because the plaintiff submitted a resignation letter, the defendant argues that it owed her no duty under the FMLA.

The defendant asserts that the plaintiff may only escape the preemptive effect of her resignation by proving that her resignation was made involuntarily. (Doc. 7 at 4 (citing *Paasch v. City of Safety Harbor*, 915 F. Supp. 315 (M.D. Fla. 1995); *Venero v. City of Tampa*, 830 F. Supp. 1457 (M.D. Fla. 1993), *aff'd*, 40 F.3d 389 (11th Cir. 1994); *Christie v. United States*, 518 F.2d 584, 587 (Ct. Cl. 1975)). The defendant further asserts that

> [f]ederal courts have relied upon a four-factor analysis to determine whether a resignation was voluntary. (Citation omitted). These factors are: (1) whether the employee had an alternative, (2) whether the employee understood the nature of the choice he was given, (3) whether the employee was given a reasonable time in which to choose and (4) whether the employee was permitted to select the effective date of resignation.

(Doc. 7 at 5).

The court finds that the cases cited by the defendant in support of its position are

inapposite to the facts found in the instant case for the reasons set out herein. An analysis of those decisions is appropriate under the circumstances.

In *Paasch v. City of Safety Harbor*, the plaintiff, a city employee, left work for a two-week vacation. *Paasch*, 915 F. Supp. 315. On July 16, 1993, just before he was due to return to work, his psychiatrist sent the city a letter excusing him from his job until the psychiatrist had an opportunity to evaluate him further, and gave notice that the plaintiff had an appointment scheduled for July 20, 1993. *Paasch*, 915 F. Supp. at 317. By August 3, when the defendant still had not heard anything from the plaintiff, it sent him a letter requesting information about his medical condition and an expected return to work date by August 9. *Id.* The plaintiff did not provide the requested information by August 9, but his attorney met with a city personnel officer on that date. The personnel officer testified that the plaintiff's attorney told her that day that the plaintiff "unequivocally would not be returning to work, but would be resigning." *Id.* at 317.

At the plaintiff's attorney's request, the personnel officer sent him a short-term disability form to send to his insurance company. *Id.* at 317-18. Thereafter, on August 10, the city sent the plaintiff another letter, telling him that if he had not provided the information requested in the August 3 letter by August 17, disciplinary action may be taken against him, up to termination. *Id.* at 318. The next day, the plaintiff's attorney sent the city a letter along with medical reports and a request for the city to "render all assistance necessary to a smooth and rapid determination of disability." *Id.* Based upon the medical reports and conversations with the plaintiff's attorney, the city determined that the plaintiff would never return to work.

The city's attorney wrote the plaintiff's attorney a letter informing him of its

8

determination that the plaintiff's employment should be terminated. In its letter, the city offered the plaintiff the opportunity to resign, rather than be terminated. The plaintiff's attorney informed the city's attorney that the plaintiff was willing to resign, but wanted some assurances regarding disability benefits. The plaintiff's attorney even requested an August 30 resignation date so that the resignation would be after the plaintiff's claim for disability benefits was made because a disability that occurred while employed by the city would entitle the plaintiff to greater benefits than a claim made outside of the city's employ.

On August 30, the city had not received the plaintiff's resignation letter. Therefore, on September 1, the city sent the plaintiff a letter scheduling a disciplinary hearing for the next day. The plaintiff's attorney responded that the plaintiff would not attend due to his mental condition and that the plaintiff had no intention of resigning, and further requested that the city assist the plaintiff in receiving medical care through its insurer.

The plaintiff's attorney appeared for the disciplinary hearing and requested that the effective date of termination be after Labor Day weekend. The city changed the plaintiff's date of termination to September 7. On September 7, the plaintiff submitted a letter of resignation to the city that stated:

> It is my understanding that if I do not resign today, my employment . . . will be terminated due to an illness, not in my control, that prevents me from performing my duties at this time.
>
> If terminated, I would stand to lose a sizeable quantity of benefits which I can ill afford. . . .
>
> Under duress, I hereby resign my position. . . .

*Paasch*, 915 F. Supp. at 319-20. The next day, the city sent the plaintiff a check for his unused

9

leave, which the plaintiff cashed.

The following month, the plaintiff filed his FMLA suit against the city. Then, in November, the plaintiff filed a claim for long-term disability benefits and represented that he was unable to ever return to work for the city. *Paasch*, 915 F. Supp. at 320.

The *Paasch* court determined that the plaintiff's FMLA claim was an afterthought because, among other reasons, the plaintiff's attorney never mentioned the FMLA in any of his communications with the city and because, until September 2, the plaintiff never sought leave, but only sought disability benefits. *Id.*, 915 F. Supp. at 321. The defendant argued that even if the plaintiff did request leave, his resignation terminated his request, citing 29 C.F.R. § 825.309(b), which states that "[i]f an employee gives unequivocal notice of intent not to return to work, the employer's obligations under [the Act] . . . to restore the employee cease," the defendant asserted that the plaintiff gave "unequivocal notice of intent not to return to work." *Id.* 915 F. Supp. at 322.

Turning to whether the plaintiff's resignation was voluntary, the court noted:

> Employee resignations are presumed to be voluntary. Plaintiff must overcome this presumption by showing with sufficient evidence that the resignation was submitted under duress. The test for whether an employee was under duress to resign is that one side involuntarily accepted the terms of the other side, the circumstances permitted no other alternative, and the said circumstances were the result of coercive acts of the opposing side. (citation omitted). . . . [T]he voluntariness of resignations has been upheld where they are submitted for purposes of avoiding threatened termination for cause.

*Paasch*, 915 F. Supp. at 322 (quoting *Venero v. City of Tampa*, 830 F. Supp. 1457 (M.D. Fla.

1993), *aff'd*, 40 F.3d 389 (11th Cir. 1994)).[8] Therefore, the mere assertion that he resigned because he was facing termination was not enough to rebut the apparent voluntariness of the plaintiff's resignation. The court further enumerated four factors that the *Venero* court quoted for analyzing voluntariness:

> (1) Whether the employee was given some alternative; (2) whether he understood the nature of the choice he was given; (3) whether he was given a reasonable time in which to choose; and (4) whether he was permitted to select the effective date of his resignation.

*Paasch*, 915 F. Supp. at 322 (citing *Stone v. University of Maryland Medical Sys. Corp.*, 855 F.2d 167, 174 (4th Cir. 1988)). Finding that Paasch had the option of resigning or challenging his termination, that he understood the options, as well as the fact that he was given several weeks to make his decision and that he was given great leeway with his resignation date, the court determined that the plaintiff's resignation was voluntary.[9] *Id.* at 323.

In another case cited by the defendant, *Christie v. United States*, the plaintiff was "issued an Advance Notice of Proposed Removal for 'Attempting to Inflict Bodily Injury on Your Supervisor - - First Offense.'" *Christie v. United States*, 518 F.2d 584, 586 (Cl. Ct. 1975). After the plaintiff denied the charges, the agency notified her of its decision to terminate her for cause. At the same time, the plaintiff's installation was going through a reduction-in-force, so the

---

[8] In *Venero*, the plaintiff police officer used a racial slur while on the job. As a result, he was given the choice to a) resign and receive a favorable recommendation as well as deletion of the incident from his record; or b) not resign and not receive a favorable recommendation and have the incident made public and recorded in his personnel file. 830 F. Supp. at 1459. Setting out the factors as set out in *Paasch* herein, the court found that the plaintiff had at least constructive knowledge of his rights under the "Police Bill of Rights" as he had worked with the Tampa PD for twenty-six years. Additionally, the plaintiff did not allege that he was forced to make an immediate decision or that a resignation date was forced on him. Therefore, the court found that his resignation was voluntary. *Id.* at 1460.

[9] The court also emphasized the fact that the plaintiff was represented by counsel throughout this entire time period and in light of that, the plaintiff could not argue that he was denied the opportunity to make a free and informed choice. *Paasch*, 915 F. Supp. at 322.

11

agency gave her the opportunity to resign voluntarily through Discontinued Service Retirement rather than be terminated for cause. *Id.*

The plaintiff attempted to offer her resignation conditioned upon the assertion that it was being offered under duress, but the agency would not accept a conditioned resignation. Thereafter, the plaintiff offered her unconditioned resignation and submitted an application for Discontinued Service Retirement.

After her resignation, the plaintiff again raised her previous contention that her resignation was involuntary and appealed to the Appeals Examining Office ("AEO"). In her appeal, she claimed her resignation was an "adverse action" and requested a hearing. The AEO denied her request and its denial was affirmed. The plaintiff then filed an action in federal court claiming that she had no choice but to resign. *Christie*, 518 F.2d at 587.

Enumerating the factors set out herein, the court again noted that resignations are presumed to be voluntary, and absent evidence that the plaintiff's resignation was "involuntarily extracted," the presumption of voluntariness prevails. *Christie*, 518 F.2d at 587. The court found that the evidence before it supported the AEO's finding that the "plaintiff chose to resign and accept discontinued service retirement rather than challenge the validity of her proposed discharge for cause." *Christie*, 518 F.2d at 587. In upholding the AEO's finding, the court further noted that:

> The fact remains, plaintiff had a choice. She could stand pat and fight. She chose not to. Merely because plaintiff was faced with an inherently unpleasant situation in that her choice was arguably limited to two unpleasant alternatives does not obviate the voluntariness of her resignation. (Citation omitted).
>
> This court has repeatedly upheld the voluntariness of resignations where

> they were submitted to avoid threatened termination for cause. (Citation omitted).
> Of course, the threatened termination must be for good cause in order to
> precipitate a binding, voluntary resignation.

*Christie*, 518 F.2d at 587-88.

The facts of the instant case are easily distinguishable from the facts in the cases set out above and cited by the defendant. First, the plaintiff was not given any alternative to resignation. Construing the facts in the light most favorable to the plaintiff, she was told that she would not receive her paycheck unless she signed a resignation letter. There is no evidence that the plaintiff was given any real choice. Although Houston testified that it was not Wee Care policy to require a resignation letter for issuance of a paycheck, no evidence exists that the plaintiff was, or should have been, aware of such policy. The relevant timecard specifically states that a resignation letter was needed. (Doc. 10 at P1). Second, it is apparent that the plaintiff perceived that she could get her money only if she submitted the requested letter. Third, it is evident that the time constraints imposed were inappropriate, particularly considering the circumstances with her husband's situation and the fact that the matter was first raised when she came to get her check. Finally, the plaintiff was clearly not permitted to select a resignation date. In fact, not only did Wee Care not permit the plaintiff to choose a resignation date, it actually made her resignation effective the last day before her planned vacation began so that she did not receive pay that she was due to receive for paid vacation time.

Using the *Venero* factors, the court is not convinced that the plaintiff's resignation was voluntary as a matter of law. Furthermore, in the cases cited by the defendant, the issues surrounded a voluntary resignation and a termination for cause. The plaintiff herein was clearly advancing an FMLA request. Still further, the plaintiff in *Paasch* was being assisted by counsel

during the relevant times. That is not the situation in the instant case. No evidence is offered that the plaintiff might have been facing a termination for cause situation or a voluntary termination to obtain disability benefits for herself.

Because the defendant has failed to offer any authority on point in support of its arguments and because the court finds that issues of material fact exist in this case, the defendant's motion for summary judgment is due to be denied. The intent of the defendant is to be determined by a jury.

## CONCLUSION

Upon consideration, the court finds that the defendant's motion for summary judgment (doc. 6) is due to be denied. An order consistent with this court's findings will be entered.

The Clerk of the Court is **DIRECTED** to serve a copy of this memorandum opinion upon counsel of record.

**DONE**, this 5th day of October, 2004.

_____
**JOHN E. OTT**
United States Magistrate Judge